DeForest C. Pitt, J.
The Civil Service Employees Association, Inc., seeks by this article 78 proceeding to vacate an order issued by the newly created Public Employment Relations Board. (Hereinafter referred to as, “Board”.) The subject order is stated as follows:
“ now, therefore, we order the State Negotiating Committee to refrain from negotiating with the Civil Service Employees Association on an exclusive basis with respect to the terms and conditions of employment of employees of the State of New York within the general unit until this Public Employment Relations Board resolves the dispute concerning representation status within such unit.
“we further order that the State Negotiating Committee be neutral in its treatment of employee organizations which file timely petitions supported by the requisite showing of interest to represent employees of the State of New York within the general unit until this Public Employment Relations Board resolves the dispute concerning representation status.”
Some factual background is felt to be essential. The pertinent events preceding this application may be stated in the order of their happening as follows:
1. On September 1, 1967, the Public Employees’ Fair Employment Act (Civil Service Law, art. 14, known as the Taylor Act) became effective.
2. On November 15, 1967, Governor Nelson A. Rockefeller, determined the existence of three negotiating units for State employees.
3. By letter dated November 15, 1967, the Governor, through the chairman of his neogtiating committee granted, with but two exceptions, the request of the petitioning association to be' the representative of all State employees.
4. On November 17, 1967, New York State Employees Council 50, American Federation of State, County and Mtiiiicipal Employees, AFL-CIO (hereinafter referred to as Council 50)" requested a stay of negotiations between the petitioning association and the Governor before the Board.
*509 5. While the Board was considering its decision upon the above request and on November 24, 1967, Council 50 applied for similar relief to the Honorable John H. Pennock sitting at Special Term, Albany County, pursuant to article 78 of the CPLR. The requested relief was denied by the court. (55 Mise 2d 250.)
6. Thereafter, and on November 30, 1967, the Board issued the above-noted order, which is, as stated, the subject of this proceeding.
Mr. Justice Pennock, in refusing to grant the requested stay wrote firstly, in regard to the Governor, that, ‘ ‘ He has done exactly what the statute has authorized him to do, i.e.,[1] ascertain the public employees’ choice of employee organization as their representative * * * on the basis of dues deduction authorization and other evidences’”. Further, and secondly, in view of the fact that the application for a similar stay was then pending undetermined before the Board, he continued: ‘ ‘ It would seem that to grant a stay of the executive process at this point would be an abortive attempt by the court to disrupt the orderly process as designed by legislative process and deprive not only the executive function of its powers, but also to inject itself into an administrative proceeding still pending without basis in fact or Iuav. ” (55 Misc 2d 250, 252.)
This court is in complete agreement Avith Justice Pennock in his analysis of the issues presented to him.
Noav, however, the issue is raised as to the ability of the Board to, in effect, review and modify the Governor’s decision. Could the Board lawfully issue the subject order? It is this court’s opinion that it could.
It is essential to reflect upon the legislative purpose in enacting the Taylor Act and creating, as it did, the Board. Section 200 of the Civil Service Law reads as follows: “ Statement of policy. The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships betweén government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted' operations and functions of government. These policies are best effectuated by (a) granting to public employees the right of organization and representation, (b) requiring the state, local governments and other political subdivisions to negotiate, with, and enter into written agreements with employee organizations representing public employees which have been certified ; or-recognized, (c) creating a public- employment relations board to assist in resolving disputes between public employees and *510 public employers, and (d) continuing the prohibition against « strikes by public employees and providing remedies for violations of such prohibition.”
The Governor in his message accompanying his approval of the Taylor Act stated in part: “ This legislation ushers in a new age of public employee relations in New York State. * * * This law was enacted upon my urgent request and adopts the recommendations of the Governor’s Committee on Public Employee Relations. * * * The necessity of this law has been unquestionably demonstrated over the years by the utter inadequacy of the Condon-Wadlin Law to resolve paralyzing strikes and threats of strikes by public employees. * * * This legislation implements the Taylor Committee’s recommendations for establishing fair conditions for organization and collective negotiating by public employees within a framework that protects the public against the interruption or impairment of essential government services.”
Understanding the legislative purpose in the enactment of this new act, the true role of the Board becomes apparent. If it is, 11 to assist in resolving disputes between public employees and public employers,” it must be allowed to make such pronouncements as will, in its judgment, “ promote harmonious and cooperative relationships”. (Civil Service Law, § 200.) It must clearly have the authority to review the acts of the public employer, whether he be the Governor or another, and it must be allowed to make determinations which will be binding upon both the public employer and the employee alike if its existence is to have any meaning. It is to be noted here, perhaps, that the Legislature refrained from exact pronouncements as to the authority of the Board, and in fact went quite far toward clothing the Board with broad powers. This court can only deem that this was done with specific intent. (See, generally, Civil Service Law, § 205 and notably subd. 5, pars, [a] and [k], and subd. 6.)
None of the aforesaid is, of course, meant to clothe the Board with such power as to allow it to make a determination violative of lawful procedure, or in error of law, or to be arbitrary or capricious or otherwise act contrary to our statutory safeguard. (CPLR, art. 78.) However, what it has done in the subject order is not prohibited by statute[1] and in the Board’s well- *511 reasoned opinion it becomes clear that the order was made in an effort to satisfy the over-all legislative intent.[2]
The parties have addressed themselves to the question of expediency. It is argued, somewhat forcibly, that the subject order of the Board will cause delay and destroy meaningful negotiations at this point and otherwise that the order was inappropriate and ill-advised.
This court will not, and indeed cannot, substitute its independent judgment for that of the administrative body. (Matter of Kaelber v. Sahm, 281 App. Div. 980, affd. 305 N. Y. 858.)
Summarily, it may be stated that this court finds that the Board did not act illegally and that its resolution of the presented problems was not arbitrary, but was in fact based upon an apparently thorough analysis of similar problems posed in the field of labor relations, which problems could properly be considered to be analogous.
Such interference, it is felt, would be an unwarranted intrusion of judicial power into the administrative process of government.
Having reached the above conclusions it becomes unnecessary to specifically comment or pass upon the motion made to dismiss the petition.
The respondent, Public Employment Relations Board, is directed to submit judgment dismissing the petition as to all parties.

. Under the Board’s order, negotiations may continue as the budget submission date approaches, in an apparent assist to the “ orderly and uninterrupted functions of government ”, and yet, the Board may still inquire into the underlying questions of representation status and certification in an effort to resolve such disputes and insure the protection of employee rights of representation.

 Subdivision 1 of section 204 of the Civil Service Law requires an appropriate public employer to negotiate collectively with an employees’ organization when certified or recognized. This, however, is not felt within the context of the factual background here presented to prohibit negotiations prior to .such certification.